UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

STEPHEN R. HAYES,

      Plaintiff,

   v.

CRST VAN EXPEDITED, INC., CRST
INTERNATIONAL, INC., DRIVER
HIRING CONNECTION, JOHN DOE
OWNERS AND OPERATORS, and JOHN
DOE DECISION MAKERS,

      Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 12-00027
(JEI/KMW)

**OPINION**

**APPEARANCES:**

LAW OFFICES OF RICHARD L. PRESS & ASSOCIATES, LLC
LaTonya N. Bland-Tull, Esq.
23 E. Black Horse Pike
Pleasantville, NJ 08232
      Counsel for Plaintiff Stephen R. Hayes

GEORGE W. WRIGHT & ASSOCIATES, LLC
George W. Wright, Esq.
Narinder S. Parmar, Esq.
505 Main Street
Hackensack, NJ 07601
      Counsel for Defendants CRST Van Expedited, Inc. and
      CRST International, Inc.

**Irenas**, Senior District Judge:

This employment discrimination matter comes before the

Court on Defendants CRST Van Expedited, Inc. ("CRST Expedited")

and CRST International, Inc.'s motion for summary judgment.[1]  For the reasons set forth below, the Court will grant Defendants' motion.

## I.

Plaintiff Stephen Hayes is a former HVAC mechanic.  In or about August 2009, he completed a commercial driving course at Superior Tractor Trailer Training School ("Superior") in Pleasantville, New Jersey and obtained his Commercial Driver's License.

Around the time of his graduation, Plaintiff applied for a job as a tractor-trailer driver with Defendant CRST Expedited, a subsidiary of Defendant CRST International, Inc.  Plaintiff was 71 years-old when he applied.  At the time, CRST Expedited was one of the largest long-haul truckload motor carriers in the United States, operating more than 1,200 company-owned tractors and 3,000 van trailers, and employed approximately 2,500 drivers at any given time.

There was a high turnover rate among those 2,500 drivers: during the period between September 1, 2008 and October 20, 2009, CRST Expedited employed 7,663 drivers total.  (Defs.'

---

[1] The Court has federal subject matter jurisdiction pursuant to 28 U.S.C. ¶ 1331.

2

Facts ¶ 12)[2]   CRST Expedited received approximately 10,000 applications per month for driver positions and accepted approximately 500 of them.  (Defs.' Facts ¶ 13)

In June 2009, approximately two months prior to the submission of Plaintiff's application, CRST Expedited implemented an unwritten policy that precluded hiring applicants who had caused a rear-end, lane-change, or intersection accident within the previous two years.  (Defs.' Facts ¶ 22)  The policy was implemented and conveyed to CRST employees by managers during meetings and "oral conversations."  (Defs.' Facts ¶ 19) The policy was not reduced to writing until June 2010.  (Defs.' Facts ¶ 33)  CRST Expedited points to several applications it denied in late 2009 because the candidates were involved in prohibited accidents as evidence of the existence of the policy. (See Defs.' Facts ¶ 26-32)

Plaintiff completed and filed his CRST application with Judy Bowman of Defendant Driving Hiring Connection ("Connection"), an independent contractor that recruits drivers

---

[2] The Court uses "Pl.'s Facts ¶" and "Defs.' Facts ¶" to refer to Plaintiff's and Defendants Statement of Material Facts, respectively.

on behalf of CRST pursuant to a commission broker agreement.[3]

Bowman then filed an application on Plaintiff's behalf online.

In addition to including Plaintiff's age, Bowman identified

an April 2008 accident Plaintiff was involved in.  Bowman

described it as follows:

> WAS APPROACHING STOP AND PRESSED ON THE BRAKES AND THE
> CAR DIDN'T STOP. HE HIT ANOTHER VEHICLE.   POSSIBLE
> MECHANICAL FAILURE.  ENCLOSED IS A STATEMENT FROM WHERE
> THE CAR WAS REPAIRED THAT EXMPLAINS WHAT MAY HAVE
> HAPPENED.

(Defs.' Facts ¶ 76)

Bowman included with the application a note from a

repairman stating, "[c]arbon in the throttle body may cause the

throttle to stay engaged." (<u>Id.</u> at 80)  Bowman added the

following: "The Policeman put down that his foot slipped off

brake onto gas. This is not what he [Plaintiff] told them."

(Defs.' Facts ¶ 81)

Plaintiff's application was received and reviewed by Alexis

West, the CRST Hiring Coordinator who reviewed all applications

submitted by outside recruiting contractors.  West subsequently

forwarded Plaintiff's application to Joshua Birr, a Supervisor

in the Safety Department, with a notation: "need [']08 accident

approved." (Defs.' Facts ¶ 91)  Such approval was not

---

[3] Although Plaintiff named Connection as a Defendant, and CRST
Expedited's cross-claim named Connection as a defendant,
Connection has not made an appearance in the instant matter.

forthcoming.  Birr replied that CRST "must go by the police report."[4]  (Defs.' Facts ¶ 92)

Bowman was advised that CRST would not hire Plaintiff. Bowman then told Plaintiff that he was not hired because CRST's Safety Department had concerns about the accident.[5]  (Pl.'s Facts ¶ 8)

In January 2010, Plaintiff was hired by Swift Transportation.  He was dismissed therefrom six months later, a brief tenure in which he incurred three accidents.  (Defs.' Facts ¶¶ 111-12)

Plaintiff filed a Charge of Discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC") on October 20, 2009.  Plaintiff alleged he was not hired because of his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA").

On September 26, 2011, EEOC issued a Determination in which it found "there is reasonable cause to believe that Respondent

---

[4] Birr was apparently following CRST policy: "It is CRST Expedited's policy to rely on police reports in determining whether an applicant was at fault for an accident as police reports are the only independent reliable sources of information."  (Defs.' Facts ¶ 95)

[5] Although not relevant to the Court's legal determinations, the Court notes that Bowman notified Plaintiff that he was "pre-approved for employment with CRST" and invited him to a company orientation.  (Pl.'s Facts ¶ 6)  Plaintiff, however, was notified of his rejection prior to the occurrence of the orientation.

violated the ADEA when it failed to hire [hire] on the basis of
his age." (Pl.'s Ex. F)

On October 13, 2013, EEOC issued a Notice of Right to Sue
Letter, finding "reasonable cause to believe that violations of
[the] ADEA" occurred. (Pl.'s Ex. G)

## II.

Summary judgment is proper if "the movant shows that there
is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law." Fed. R. Civ. P.
56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322
(1986). In deciding a motion for summary judgment, the Court
must construe the facts and inferences in a light most favorable
to the non-moving party. Pollock v. Am. Tel. & Tel. Long Lines,
794 F.2d 860, 864 (3d Cir. 1986).

"'With respect to an issue on which the non-moving party
bears the burden of proof, the burden on the moving party may be
discharged by 'showing' – that is, pointing out to the district
court – that there is an absence of evidence to support the
nonmoving party's case.'" Conoshenti v. Public Serv. Elec. &
Gas, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting Celotex, 477
U.S. at 323). The role of the Court is not "to weigh the
evidence and determine the truth of the matter, but to determine
whether there is a genuine issue for trial." Anderson v.

6

Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 249.

### III.

Although Plaintiff raised a series of claims in his Amended Complaint, his only remaining claim is for violating the ADEA. And because Plaintiff has failed to meet his burden of production challenging Defendants' non-discriminatory justification for its adverse employment action, summary judgment will be granted in Defendants' favor.

The ADEA makes it unlawful for an employer to, inter alia, "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

Courts evaluating ADEA claims use the three-step McDonnell Douglas test: (1) first, the plaintiff must demonstrate a prima facie case of discrimination; (2) if shown, the burden of production shifts to the employer to identify a legitimate, non-discriminatory reason for the adverse employment action; (3) if the employer does so, the burden of production returns to the

7

plaintiff to demonstrate that the employer's proffered rationale was a pretext for discrimination.  Smith v. City of Allentown, 589 F.3d 684, 689-91 (3d Cir. 2009); O'Malley v. Fairleigh Dickinson Univ., Civ. No. 10-6193 (KSH/CLW), 2014 WL 67280, at *8 (D.N.J. Jan. 7, 2014); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  The plaintiff always bears the burden of persuasion.  O'Malley, 2014 WL 67280, at *8.  Further, part of the plaintiff's burden of persuasion involves proving "that age was the 'but-for' cause of the employer's adverse decision."  Gross v. FBL Fin. Servs., 557 U.S. 167, 176-77 (2009).

"To establish a prima facie case of age discrimination under the ADEA, [a plaintiff] must make a showing that: (1) she is forty years of age or older; (2) the defendant took an adverse employment action against her; (3) she was qualified for the position in question; and (4) she was ultimately replaced by another employee who was sufficiently younger."  Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013).

Plaintiff sets forth a prima facie case.  He is over forty years-old; he was denied employment; he possessed a Commercial Driver's License, thereby being qualified for the position; and substantially younger applicants were hired.  (See Pl.'s Facts ¶ 10 (identifying three recent graduates of Superior who were substantially younger than Plaintiff and hired by Defendants))

Defendants, in turn, put forward a legitimate, non-discriminatory reason for the adverse employment action: the company's June 2009 hiring policy that precluded hiring applicants who had been in rear-end, lane-changing, or intersection accidents within two years of applying. And Defendants support their justification with sufficient evidentiary support: Joshua Birr, a Supervisor in Defendants' Safety Department, set forth that in June of 2009 "CRST Expedited implemented an unwritten policy that excluded applicants who, within the previous two years were responsible for causing" such accidents. (Birr Decl. ¶ 17)

Plaintiff, however, has failed to meet his burden of production proving that such an explanation is pretext. Plaintiff calls the policy "a fabrication" yet points to no affirmative evidence indicating that this is so. (Opp'n Br. at 1)

Instead, Plaintiff relies only on the EEOC's Right to Sue Letter, where the Commission found "reasonable cause to believe that violations of [the] ADEA" occurred. (Pl.'s Ex. G). The Commission, however, did not have a full record before it and allegedly took an adverse inference against Defendants because of their failure to submit requested evidence. See Transcript of April 15, 2014 Oral Argument. Consequently, the letter

provides no probative value of pretext, and thus does not satisfy Plaintiff's burden.

**IV.**

For the reasons stated above, Defendants' motion for summary judgment will be granted.  An appropriate order accompanies this opinion.

Date: April 17, 2014

_/s/ Joseph E. Irenas_____

Joseph E. Irenas, S.U.S.D.J.

10